# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| LIBERTY INSURANCE CORPORATION, | ) |
| | ) |
| Plaintiff, | ) Case No.: 2:21-cv-01622-GMN-VCF |
| vs. | ) |
| | ) **ORDER** |
| DANIEL J. HOHMAN, individually and as a | ) |
| Natural Parent Guardian of C.H., a minor; and | ) |
| SERGIO MITCHELL, an individual, | ) |
| | ) |
| Defendants. | ) |

Pending before the Court is the Renewed Motion for Summary Judgment, (ECF No. 29),[1] filed by Plaintiff Liberty Insurance Corporation ("Plaintiff").  Defendants Daniel J. Hohman and Sergio Mitchell ("Defendants") did not file a Response, and the time to do has passed.  Despite Defendants non-opposition, Plaintiff filed a Reply, (ECF No. 33).

For the reasons discussed below, the Court **GRANTS** Plaintiff's Motion for Summary Judgment.

## I.     BACKGROUND

This is a declaratory judgment action in which Plaintiff seeks a "declaration that it has no duty to defend or indemnify its insured under a homeowner's insurance policy for a lawsuit regarding the insured's admitted intentional acts committed during the course and scope of his employment." (Renewed Mot. Summ. J. ("MSJ") 2:9–11, ECF No. 29).

---

[1] The Court denied Plaintiff's original Motion for Summary Judgment, (ECF No. 23), without prejudice for failure to demonstrate proper service upon Defendant Sergio Mitchell. (*See* Min. Order, ECF No. 26). Specifically, the Court advised Plaintiff to serve Defendant Sergio Mitchell "at his physical address and file proper proof of service" because he is not registered with the Court's Case Management/Electronic Case Filing ("CM/ECF") system. (Min. Order, ECF No. 26).  Plaintiff's Renewed Motion for Summary Judgment addresses the concern identified by the Court by certifying it was mailed to Defendant Sergio Mitchell's address on the docket. (Renewed Motion for Summary Judgment 15:1–18, ECF No. 29).

The lawsuit referenced by Plaintiff was filed by Defendant Daniel J. Hohman in the Eighth Judicial District Court of Nevada on behalf of his son ("C.H."), a minor (the "Underlying Lawsuit"). (*See* Underlying Lawsuit Complaint, Ex. A to Compl., ECF No. 1-1). The Underlying Lawsuit asserts Defendant Sergio Mitchell ("Defendant Mitchell"), a janitor at Ruby Duncan Elementary School, approached C.H., a student, after he kicked a janitor bucket, breaking a spring off the bucket. (*Id.* ¶ 14, Ex. A to Compl.); (Clark County School District ("CCSD") Crime Report at 10, Ex. B to Renewed MSJ, ECF No. 29-2). C.H. began cursing at Defendant Mitchell, leading Defendant Mitchell to grab C.H. by his neck. (*Id.*, Ex. B to Renewed MSJ). C.H. complained Defendant Mitchell was choking him, causing Jason Meyers ("Mr. Meyers"), a teacher nearby the incident, to intervene. (*Id.*, Ex. B to Renewed MSJ). C.H. suffered slight bruising on his neck from the incident. (*Id.*, Ex. B to Renewed MSJ).

CCSD Police Officer Brittany Loguidice ("Officer Loguidice") was called to the school, where she took statements from Defendant Mitchell, C.H., and Mr. Meyers. (*Id.*, Ex. B to Renewed MSJ). Officer Loguidice also took a recorded statement from Defendant Mitchell using her body camera wherein Defendant Mitchell acknowledged he put his hands around C.H.'s neck "because he was cussing me out." (Defendant Mitchell Video at 3:45–50, Ex. C to Renewed MSJ, ECF No. 29-3). Officer Loguidice would subsequently author the CCSD Crime Report, which included another statement from Defendant Mitchell "admitted[ing] he grabbed [C.H.]" but had "no intention [of] hurt[ing] [him.]" (*Id.* at 10, Ex. B to Renewed MSJ). Officer Loguidice cited Defendant Mitchell for criminal battery charges. (*Id.*, Ex. B to Renewed MSJ).

At the time of the altercation, Defendant Mitchell had a Homeowners Policy (the "Policy") with Plaintiff. The Policy's liability coverage form provided Plaintiff would cover Defendant Mitchell for certain "occurrences." "Occurrences" was defined under the Policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results during the policy period, in: a. 'Bodily Injury'; or b.

'Property damage.'" (Policy at 8, Ex. C to Compl., ECF No. 1-3).  The Policy further excluded coverage to "bodily injury" or "property damage" "which is expected or intended by the 'insured,' even if the resulting 'bodily injury' or 'property damage' (1) is of a different kind, quality, or degree than initially expected or intended; or (2) is sustained by a different person, entity, real or personal property, than initially expected or intended."[2] (*Id.*, Ex. C to Compl.).

Pursuant to the Policy, Defendant Mitchell tendered the defense of the Underlying Lawsuit to Plaintiff and was assigned claim number 045014574-01 (the "Claim").  Plaintiff subsequently initiated the present lawsuit and filed the instant Renewed Motion for Summary Judgment seeking a declaratory judgment that Defendant Mitchell's conduct is not covered under the Policy. (*See generally* Renewed MSJ).  The Court discusses Plaintiff's Renewed Motion for Summary Judgment below.

## II.   <u>LEGAL STANDARD</u>

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is a sufficient evidentiary basis on which a reasonable fact-finder could rely to find for the nonmoving party. *See id.*  "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253,

---

[2] Plaintiff's Renewed Motion for Summary Judgment raises a separate Policy provision which excludes coverage for bodily injury sustained in connection with a business engaged in by the insured. (Renewed MSJ 6:23–7:23, 12:16–13:18).  Because the Court finds Defendant Mitchell's conduct is not covered under the first two Policy provisions advanced by Plaintiff, it declines to examine this third provision.

288–89 (1968)).  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal quotation marks and citations omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors*

*Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (quotation marks and citation omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is "merely colorable or is not significantly probative, summary judgment may be granted." *See id.* at 249–50 (internal citations omitted).

## III.  <u>DISCUSSION</u>

At the outset, that the Renewed Motion for Summary Judgment is unopposed does not mean that Plaintiff will automatically prevail on it.  A motion for summary judgement cannot be granted based solely on the fact that it is not opposed. *See Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013); *see also* Local Rule 7-2(d).  Instead, the movant must make a showing that it is entitled to judgment. *Martinez v. Stanford*, 323 F.3d 1178, 1182 (9th Cir. 2003).  In assessing such a motion, courts must "ensure that the motion itself is supported by

evidentiary materials," *Pinder v. Employment Dev. Dept.*, 227 F. Supp. 3d 1123, 1135–36 (E.D. Cal. 2017), and may only consider admissible, authenticated evidence. *Cristobal v. Siegel*, 26 F.3d 1488, 1494 (9th Cir. 1994). Accordingly, the Court will first determine whether Officer Loguidice's body camera footage recording her interview with Defendant Mitchell and the CCSD Crime Report are admissible. Each will be examined in turn.

### A. Admissibility of Officer Lougidice's Body Camera Footage

Evidence offered to support a motion for summary judgment must be able to be presented "in admissible form at trial." *Fonseca v. Sysco Food Servs. of Arizona, Inc.*, 374 F.3d 840, 846 (9th Cir. 2004). Under Federal of Evidence ("Fed. R. Evid.") 901, evidence may be authenticated by a witness with knowledge that the item is what it is claimed to be. Examples of evidence that satisfy this requirement include testimony "that an item is what it is claimed to be" and evidence that "was recorded or filed in a public office as authorized by law" or "is from the office where items of this kind are kept." *Id.* at 901(b).

Here, the body camera footage has been properly authenticated. Officer Loguidice testified at her deposition that she had personal knowledge of the events depicted in the footage; was called to the school on the day Defendant Mitchell put his hands around C.H.'s neck; interviewed Defendant Mitchell; recorded the encounter on her body camera; and neither redacted nor edited her body camera footage recording her interview. (Officer Lougidice Dep. 6:19–12:2, Ex. E to Renewed MSJ, ECF No. 29-6). Additionally, Wendy Ross ("Ms. Ross"), custodian of records at the CCSD Police Department, testified the copy of Officer Loguidice's body camera footage was a true, accurate, and complete copy of the original. (Wendy Ross Dep. 5:7–16:7, Ex. D to Renewed MSJ, ECF No. 29-5). Taken together, the testimony of Officer Loguidice and Ms. Ross properly authenticate the body camera footage. Accordingly, because Plaintiff has properly authenticated the body camera footage, it will be considered for purposes of resolving the Renewed Motion for Summary Judgment.

**B.  Admissibility of CCSD Crime Report**

Rule 801(c) defines hearsay as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."  A police report, including the police officer's statements and observations, are admissible in civil cases under the public records hearsay exception. *See* Fed. R. Evid. 803(8); *see also Colvin v. United States*, 479 F.2d 998, 1003 (9th Cir. 1979) ("Entries in a police report based on an officer's observation and knowledge may be admitted, but statements but statements attributed to other persons are clearly hearsay."); *Blanton v. Cnty. of Sacramento*, No. 2:09-cv-01832, 2012 WL 2798920, at *1 n.4 (E.D. Cal. 2012) ("The police officer's statements and observations recorded in a police report are admissible, as is the summary of [plaintiff's] statement made to Officer Bricker under the public-records hearsay exception contained in Fed. R. Evid. 803(8)"); *Josfan v. Indochine*, No. 09-cv-07904, 2012 WL 113371, at *2 (C.D. Cal. 2012) ("A police officer's statements and observations recorded in a police report are admissible under the public-records hearsay exception contained in Federal Rule of Evidence 803(8).").

Here, the CCSD Crime Report prepared by Officer Loguidice is admissible to the extent it is predicated on her personal observation and knowledge. (CCSD Crime Report at 9–11, Ex. B to Renewed MSJ, ECF No. 29-2).  Additionally, the CCSD Crime Report also contains summaries of statements made by Defendant Mitchell to Officer Loguidice. (*Id.* at 10, Ex. B to Renewed MSJ).  These statements would be admissible under Fed. R. Evid. 801(d)(2)(A) as an opposing party statement. *See Thompson v. Polaris Indus. Inc.*, No. 2:16-cv-02868, 2019 WL 2173965, at *8 (D. Ariz. May 17, 2019).  Therefore, the CCSD Crime Report is admissible pursuant to Rules 801(d)(2)(A) and 803(8).

**C.  Applicability of the Policy**

1        As stated, two provisions of the Policy limit coverage when the suit is based on

2 Defendant Mitchell's intentional acts.  The first provision limits the scope of personal liability

3 coverage to "occurrence[s]", defined as an "accident" resulting in bodily harm or property

4 damage. (Policy at 8, Ex. C to Compl.).  Second, the contract specifically excludes personal

5 liability and payment for others' medical expenses where the bodily injury or property damage

6 was "expected or intended by the 'insured[.]'" (*Id.*, Ex. C to Compl.).

7        These provisions are typical of homeowners' insurance policies in Nevada and Nevada

8 courts have had ample opportunity to construe them. *See e.g., Beckwith v. State Farm Fire and*

9 *Cas. Co.*, 83 P.3d 275, 277 (Nev. 2004).  In doing so, Nevada courts have combined these

10 "occurrence" and "expected or intended" provisions into one analysis by defining "accident"—

11 and thereby "occurrence"—as "a happening that is not expected, foreseen, or intended." *See id.*

12 at 276.  Thus, under Nevada case law, insurance companies are obligated to provide coverage

13 only when the happening—the circumstances giving rise to injury—is unexpected, unforeseen,

14 and unintended. *See id.*

15        Consequently, even when the ultimate resultant harm is not necessarily intended, injuries

16 do not qualify for coverage when the circumstances giving rise to the injury are created

17 intentionally. *See e.g., id.* at 277, *but see Allstate Ins. Co. v. Sanders*, 495 F. Supp. 2d 1104,

18 1107–08 (D. Nev. 2007) (holding that the intent to throw an object was not sufficient to result

19 in a non-accident, but that there must be some expectation of contact).  "Therefore, the focus of

20 the analysis is . . . whether the incident underlying [the] claim[] was unexpected, unforeseen,

21 and unintended." *Hansen v. Liberty Mut. Fire. Ins. Co.*, No. 2:11-cv-01519, 2012 WL 4611013,

22 at *4 (D. Nev. Sept. 30, 2013).

23        Here, Defendant Mitchell's actions were intentional, and thus, outside the scope of the

24 Policy.  Defendant Mitchell acknowledges he deliberately placed his hands around C.H.'s neck.

25 (Defendant Mitchell Video at 3:45–50, Ex. C to Renewed MSJ); (CCSD Crime Report at 10,

Ex. B to Renewed MSJ).  Defendant Mitchell need not have intended to injure C.H. because the underlying conduct causing the injury, placing his hands around C.H.'s neck and choking him, was not an accident, and injury suffered therefrom was foreseeable. *Hansen*, 2012 WL 4611013, at \*4; *see id.* at \*6 ("Intent to cause a specific injury is not necessary to show an intentional act for the purpose of disqualifying insurance coverage."); *Beckwith*, 83 P.3d 275 (2004) (finding that intentional striking of someone in the face is an intentional act subject to a properly drafted "intentional acts" exclusion clause).  Because Defendant Mitchell's conduct is excluded from the Policy, Plaintiff does not have a duty to defend and indemnify Defendant Mitchell in the Underlying Lawsuit.

## IV.   CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Renewed Motion for Summary Judgment (ECF No. 29) is **GRANTED.**

**DATED** this __24__ day of May, 2023.

_____
Gloria M. Navarro, District Judge
United States District Court